### 11547

*EX PARTE* NATIONAL CITY SECURITIES CORPORATION

STATE *EX REL.* CRAIG, STATE BANK EXAMINER v. BANK OF CLIO

(123 S. E., 773)

1. BANKS AND BANKING—COURT WITHOUT JURISDICTION IN PROCEEDING TO RESCIND EXCHANGE OF NOTES FOR CERTIFICATES OF DEPOSIT, WHERE STOCKHOLDERS NOT MADE PARTIES.—Application of creditor of insolvent bank to be allowed to return notes of bank, taken in exchange for certificates of deposit, *held* to vitally affect stockholders' liability to depositors, under Civ. Code 1922, § 3998, and also other depositors, and Court was without jurisdiction thereof in receivership proceeding, where stockholders were not made parties thereto.

2. APPEAL AND ERROR—SUPREME COURT MAY CONSIDER WANT OF JURISDICTION ON ITS OWN MOTION.—The Supreme Court may on its own motion hold that Circuit Court had no jurisdiction of petition.

Before DENNIS, J., Marlboro, June, 1923. Reversed and petition dismissed for want of jurisdiction.

Proceeding by the State of South Carolina on the relation of James H. Craig, State Bank Examiner, against the Bank of Clio, in which a receiver was appointed, and in which a petition was filed by National City Securities Corporation. From the decree of the Circuit Court, petitioner appeals.

*Messrs. Douglas McKay* and *Gibson & Muller,* for appellant, cite: *Mistake in contract:* 9 C. J., 1167; 35 Law Ed., 688; 115 A. S. E., 305; 5 A. S. R., 821; 2 Bailey's Law, 623; 2 McCord Eq., 461; 49 S. C., 273; 67 S. C., 280; Pom. Eq. Juris. Sec., 847, 849, 854; 19 Am. Dec., 353; 8 Barb., 233; 95 Am. Dec., 218; 26 S. C., 47.

*Mr. J. K. Owens,* for respondent, cites: *Agency:* Greenleaf Vol. 2, Sec. 66, 67; 3 Strob., 403; 8 S. C., 129. *Mis-*

*take:* 26 S. C., 47; 35 S. C., 354; 38 S. C., 191; 5 A. S. R., 821; Pom. Eq. Juris., (3rd Ed.) Sec. 856. *Judges decree sustained:* 2 Bailey's Law, 623; 2 McCord Eq., 461; 4 Richards Eq., 349; 67 S. C., 280; 109 S. C., 477.

July 16, 1924.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Petition by the National City Securities Corporation, in the main cause above stated, to be allowed to return and have canceled certain notes of the Bank of Clio, which it had taken in exchange for certain certificates of deposit issued by the bank and held by the corporation as assignee. Since the exchange the bank has been placed in the hands of a receiver. It manifestly is to the advantage of the corporation to occupy the position of a depositor or of assignee of the certificates of deposit rather than that of a creditor, and this proceeding has been instituted for the purpose of having the corporation restored to its former position as assignee of the certificates of deposit. The basis of the application is a mistake of both law and fact with reference to the relation which the corporation bore to the bank and the effects of its exchange of "old lamps for new"; a mutual mistake of the corporation and the officers of the bank; a constructive fraud on the part of the officers of the bank who knew of the injury which would result to the corporation from the exchange; want of consideration therefor; and finally because the notes did not carry out the true intention and agreement of the parties.

The underlying facts are these: Between June 18, 1920, and October 18, 1920, at various times the Bank of Clio issued to a corporation known as Fisheries Products Company certificates of deposit, 23 in all, aggregating $76,170; they were issued in various amounts, and payable one year from the date of each, the earliest maturing June 18, 1921, and the latest October 18, 1921; at sometime thereafter,

and prior to March 25, 1921 (the exact date does not appear in the record for appeal), the National Securities Corporation of New York became the holder in due course of the $76,170 of certificates of deposit.

On March 25, 1921, for reasons satisfactory, the state bank examiner took charge of the bank under the statute, and closed its doors. The bank examiner, however, agreed that, if the directors should raise $35,000 in cash and procure extensions of 95 per cent. of depositors and creditors to January 1, 1922, he would allow the bank to reopen and continue business.

As stated, certificates of deposit to the amount of $76,170 had been issued by the bank to Fisheries Products Company, and at this time they were held by the National City Securities Company, presumably upon the indorsement of the former. Negotiations were opened by the president of the bank, Mr. Cross, and a large stockholder and director, Mr. Jackson, with the officers of the Fisheries Products Company at Wilmington, N. C., for the purpose of securing an extension on the certificates of deposit referred to. On April 1, 1921, these officers of the Fisheries Products Company at Wilmington transmitted the proposition of Messrs. Cross and Jackson to the head office of that company in New York. On April 4, 1921, the treasurer in New York wrote to the bank, stating "it is your hope to have these items extended," referring to the certificates of deposit, and offering to exchange them for "negotiable acceptances," payable $16,200 in December, $20,970 in January, 1922, and $39,000 in February, making up the $76,170 bearing interest at 8 per cent. Having no reply to this letter from Mr. Cross, the treasurer in New York on April 21, 1921, again wrote to the bank:

"We wrote you on April 4th in reference to certain certificates which you were anxious to have deferred and exchanged for acceptances due December, 1921, January and February, 1922. Those holding the certificates are anxious

to have you advise them whether or not it is your wish that arrangements be made in accordance with request made by your Mr. Jackson on his visit to our Wilmington office."

To this letter Mr. Cross, president of the bank, replied on April 23:

"We are counting on the renewal of the certificates you hold of ours. Suppose we make out these new certificates of deposit, drawing interest from the maturity of the old ones and send them to our New York correspondent for exchange for the ones you hold."

Thereafter, exactly when does not appear in the record for appeal, but evidently in the latter part of May, 1921, one Hayes, an employee of the Fisheries Products Company in Wilmington, went to Clio for the purpose of consummating the negotiations for the extension of the certificates. Adopting the account of his visit given in the affidavit of Mr. Cross:

"As a result of this (referring to the correspondence between himself and the Fisheries Products Company above mentioned), Mr. John A. Hayes came to Clio, and, after being put in full possession of the affairs of the bank and of its condition, (he) requested that indorsements of the certificates of deposit which had been issued to his company be given. I told him that this would be impossible; that we could make no preferred claims, and that the only thing that we could do was to renew the papers. He then made the proposition that he be given notes bearing 8 per cent. interest for the certificates of deposit. After discussing this at a meeting of the board of directors, and explaining to them the full transaction and how the proposition came about and the effect of it, I was authorized to give the notes."

Accordingly various notes were executed by the bank; a batch of seven notes for various amounts aggregating $16,200, payable at different dates during the month of December, 1921; a batch of seven notes for various amounts aggregating $20,970, payable at different dates during the

month of January, 1922; and a batch of seven notes for various amounts, aggregating $39,000, payable at different dates during the month of February, 1922 (these several amounts aggregating $76,170, the amount of the certificates of deposit). In addition thereto the bank executed two notes, one for $609.37, payable October 1, 1921; and one for $1,909, due October 1, 1921; and two certificates of deposit, one for $466.63, payable November 1, 1921, and the other for $1,180.50, payable November 10, 1921; all four for interest at 8 per cent.; they aggregate $4,165.50.

The twenty-one notes aggregating $76,170 were made payable to the National City Securities Corporation, and were forwarded by the bank to its correspondent bank in New York to be delivered to that company upon surrender of the original certificates of deposit aggregating a similar amount, they were so delivered and the certificates of deposit returned to the bank. The two notes and the two certificates of deposit for interest, it appears, were turned over to Hayes, representing the Fisheries Products Company, and we assume were payable to that company.

The plan for reopening the bank was consummated, and it resumed business. In December, 1921, however, it was found hopelessly involved, and in the proceeding indicated in the title above as the main cause a receiver was appointed.

In June, 1923, the National City Securities Corporation, having realized "that it had changed its status and had lost its advantageous position as depositor by accepting the notes in lieu of certificates" (quoting from the argument of counsel for this company), filed a petition in the main cause asking that the notes be canceled and that it be restored to its original status as a depositor. The awakening came from a realization of the fact that under section 3998, Vol. 3, Code of 1922, the stockholders of an insolvent bank are liable to depositors, "in a sum equal in amount to their stock, over and above the face value of the same," while they are liable to other creditors "only to the extent of the amount

remaining due to the corporation upon the stock owned by them."

It appears that there is now pending in the Court of Common Pleas for Marlboro county an action by certain depositors of the Bank of Clio on behalf of themselves and all other depositors aganist the stockholders upon their statutory liability under section 3998, Vol. 3, Code of 1922.

The petition of the National City Securities Corporation, supported by affidavits, together with the return of the receiver, similarly supported, was heard by his honor Judge Dennis, we assume at chambers, under a rule to show cause dated June 21, 1923, on September 19, 1923. On November 8, 1923, he filed an elaborate decree denying the relief prayed for and dismissing the petition, from which the petitioner has appealed.

We are of opinion that there has been an entire misconception on all sides of the rights and remedies of the parties to this proceeding; that the real controversy is between the National City Securities Company and the stockholders of the bank affecting their liability under Section 3998, Vol. 3, Code of 1922; that this controversy does not in any wise concern the receiver of the bank; and that as a consequence the Court was without jurisdiction to entertain the petition, a conclusion open to this Court *sua motu.*

The obvious objective of the petition in having it adjudicated that it be allowed to surrender the notes and be restored to its relation as a depositor is then to join in the action which has been instituted by other depositors against the stockholders upon their liability under Section 3998. That is a matter with which the receiver is not at all concerned; it is entirely separate and distinct from the administration of the estate in his hands. There is no obligation upon a creditor of the bank, a depositor, or other to accept such dividend as the receiver may pay him in full satisfaction of his claim; and, if a depositor, he is entitled to receive

his dividend and then proceed under the statute against the stockholders.

It is a matter, however, that vitally affects the interests of the stockholders, and, if the petitioner should be accorded in this proceeding the relief which he seeks, how could he accomplish his objective, have recourse upon the stockholders under Section 3998, when the stockholders have not been made parties to the proceeding eventuating in such adjudication, and, of course, are not bound thereby? To have such adjudication in this proceeding is rolling empty barrels about.

The real question upon which the rights of the National City Securities Company depend is not whether it made a mistake of law or of fact in exchanging the certificates of deposit for the notes, but whether the acceptance of the notes amounted to a novation of the certificates of deposit, which extinguished the liability of the bank upon them and the consequent liability of the stockholders to the petitioner as a depositor, and created a new obligation of the bank solely upon the notes, a matter depending upon the express or implied intention of the parties, an issue of fact determinable by a jury in which the contestants should be the National City Securities Company on the one side and the stockholders on the other. In such contest the other depositors would also have an interest in reducing the amount for which the stockholders may be liable, in order, if necessary, to increase the dividend upon their claims.

It is apparent that, if the National City Securities should prevail upon the issue of novation, it is immaterial whether the notes be surrendered for cancellation or not.

The doctrine of novation is an interesting one, which it would be improper at this time to consider. The following authorities may be consulted with profit upon the subject: 20 R. C. L., 359; 29 Cyc., 1129. *Corbett v. Cochran,* 3 Hill, 41; 30 Am. Dec., 348. *Hobson v. Davidson,* 8 Mart. O. S. (La.) 422; 13 Am. Dec., 294. *Fidelity Co. v. Shenandoah*

*V. R. Co.,* 86 Va., 1; 9 S. E., 759; 19 Am. St. Rep., 858. *Griggs v. Day,* 136 N. Y., 152; 32 N. E., 612; 18 L. R. A., 120; 32 Am. St. Rep., 704. *Studebaker v. Endom,* 51 La. Ann., 1263; 26 South., 90; 72 Am. St. Rep., 489. *Terry v. Robbins,* 128 N. C., 140; 38 S. E., 470; 83 Am. St. Rep., 663. *Bank v. Domestic Co.,* 99 Va., 411; 39 S. E., 141; 86 Am. St. Rep., 891. *Royal Co. v. Mines,* 157 Cal., 737; 110 Pac., 123; 137 Am. St. Rep., 165. *Dies v. Bank,* 129 Tenn., 89; 165 S. W., 248; Ann. Cas., 1915A, 1090. *Green v. Wallis,* 49 N. J. Eq., 48; 23 Atl., 498. *Stuckey v. Middle States Loan Co.,* 61 W. Va., 74; 55 S. E., 996; 8 L. R. A., (N. S.) 814; 123 Am. St. Rep., 977. *Barnes v. Crockett,* 111 Va., 240; 68 S. E., 983; 36 L. R. A., (N. S.) 464. *Sullivan v. Sanders,* 66 W. Va., 350; 66 S. E., 497; 42 L. R. A., (N. S.) 1010; 19 Ann. Cas., 480. *Cox v. B. & O. S. W. R. Co.,* 180 Ind., 495; 103 N. E., 337; 50 L. R. A., (N. S.) 453. *Morecraft v. Allen,* 78 N. J. Law, 729; 75 Atl., 920; L. R. A., 1915B, 1. *Dunn v. Bank of Union,* 74 W. Va., 594; 82 S. E., 758; L. R. A., 1915B, 168. *Kinsman v. Stanhope,* 50 Mont., 41; 144 Pac., 1083; L. R. A., 1916C, 443. *Lutz v. Williams,* 79 W. Va., 609; 91 S. E., 460; L. R. A., 1918A, 76.

The judgment of this court is that the decree of the Circuit Court be reversed, and that the petition be dismissed for want of jurisdiction.

MESSRS. JUSTICES WATTS, FRASER and MARION concur.
MR. CHIEF JUSTICE GARY did not participate.